IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| FAYE D. LARRABEE, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:09CV712-HEH |
| BANK OF AMERICA, N.A. and THE FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(Granting in Part and Denying in Part Defendants' Motion to Dismiss)

This is an action seeking rescission of a mortgage loan transaction under the Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"). The Amended Complaint seeks declaratory judgment validating Plaintiff's notice of rescission and establishing terms and conditions for unwinding the transaction.

The case is presently before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Bank of America, N.A. ("Bank of America") and The Federal Home Loan Mortgage Corporation ("Freddie Mac"). Bank of America and Freddie Mac contend, in essence, that the Amended Complaint fails to provide a plausible basis to support Plaintiff's claims. They cast the action as simply a desperate attempt to stave off foreclosure by urging the Court to adopt an unreasonably hyper-technical construction of TILA. Both parties have filed detailed memoranda supporting their respective positions. Because the law and facts are well presented in the

briefs and record, the Court will dispense with oral argument.

There is little dispute over the operative facts in this case. The determinative question will be its legal significance and what, if any, relief Plaintiff may be entitled to.

Plaintiff filed her original Complaint on November 12, 2009, seeking declaratory judgment. On January 8, 2010, Bank of America moved to dismiss Plaintiff's Complaint for failure to state a plausible claim for relief. This Court issued a Memorandum Opinion and Order on February 16, 2010, granting Bank of America's Motion to Dismiss. In its Order, this Court left open the issue of whether the dismissal would be with or without prejudice. In addition, the Court denied the Plaintiff's Motion to Amend her Complaint. On February 26, 2010, Plaintiff filed a Motion for Reconsideration regarding the dismissal of her Complaint.

On March 11, 2010, by agreement of the parties, the Court entered an Order vacating the Court's Orders granting Bank of America's Motion to Dismiss, denying Plaintiff's Motion to Amend, and rendering moot Plaintiff's Motion for Reconsideration. Plaintiff was granted leave to file an Amended Complaint.

On March 11, 2010, Plaintiff filed an Amended Complaint adding Freddie Mac as a Defendant and reasserting her suit for declaratory judgment.[1] Bank of America and Freddie Mac filed this present Motion to Dismiss on April 20, 2010.

---

[1] Central to the relief sought by Plaintiff is her entitlement to an extended period within which to exercise her right of rescission. Absent a violation of TILA, the debtor has three days to exercise this right. Proof of failure to provide material disclosures and notice of right to rescind extends this period to three years from closing. 15 U.S.C. § 1635(f).

According to the Amended Complaint, this controversy stems from a 2006 loan described as a refinance credit transaction evidenced by a note and secured by a Deed of Trust, both signed by Plaintiff and duly recorded. Home Loan Center, Inc., doing business as Lending Tree ("Lending Tree"), was the lender. The note and accompanying Deed of Trust were immediately transferred to Countrywide Bank, FSB ("Countrywide"). Plaintiff alleges that neither Lending Tree nor Countrywide furnished her with the proper disclosures required by TILA. Specifically, Plaintiff alleges the disclosure statement delineating the terms of the loan failed to accurately articulate the amount, number, and due dates of payments. Plaintiff maintains that the disclosure statement stated that all payments on the loan but one were due the same day—approximately 45 days after closing.

The Amended Complaint further alleges that Plaintiff engaged in a second refinance credit transaction approximately one year later in December 2007. Countrywide continued as the lender. Again, the loan was evidenced by a note and secured by a duly recorded Deed of Trust. As before, the latter instrument served as a lien against her Henrico County home. Plaintiff contends that Countrywide violated TILA by providing her with the incorrect version of the required Notice of Right to Cancel/Rescission. She maintains that the version she received improperly bore the notation "Different Lender" rather than more accurately "Same Lender." Plaintiff also avers that Bank of America acquired the assets and liabilities of Countrywide by merger,

including the loan at issue, and then assigned the note to Freddie Mac.

Lastly, Plaintiff asserts in her Amended Complaint that Countrywide provided her with a document titled "Application Fee Disclosure" that undermined the 2007 Notice of Right to Cancel. This document informed Plaintiff she would have to pay a $299.00 non-refundable application fee for the processing of her 2007 loan application. Plaintiff alleges that the non-refundable nature of this processing fee directly contradicted the language of the 2007 Notice of Right to Cancel, rendering such notice unclear.

By letter dated October 15, 2009, the Trustee under the 2007 Deed of Trust notified Plaintiff that the Trustee intended to sell her home at foreclosure on November 3, 2009. Plaintiff responded by letter dated October 19, 2009, giving notice of her intent to rescind the loan based on the above described violations of TILA. Bank of America declined to agree to rescission without tender of the amount due on the loan. The note was then assigned to Freddie Mac. On December 22, 2009, Plaintiff sent a notice of rescission to Freddie Mac.

In challenging the sufficiency of the Amended Complaint, the Defendants rely on the standard of measure announced by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). In *Twombly*, the Court held that to survive a motion to dismiss, a complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face." *Id.* at 570, 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This does not require detailed factual allegations, but mere labels, conclusions, or formulaic recitations of elements of proof will not suffice. *Id.*

The Court explained further in *Iqbal* that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n]--that the pleader is entitled to relief." 129 S. Ct. at 1950 (internal quotation marks omitted). As Judge Niemeyer noted in *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009), this analysis is context-specific and requires the "reviewing court to draw on its judicial experience and common sense." *Id.* at 193. The court also noted in *Giacomelli* that "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

To set the tenor of the debate, Bank of America and Freddie Mac stress the reluctance of the United States Court of Appeals for the Fourth Circuit to adopt the level of strict application of TILA seen in a few federal circuits. A survey of decisions applying the enforcement provisions of TILA demonstrate a clear philosophical fissure among federal circuits. Some award rescission based on hyper-technical violations, while

5

others take a more moderated approach. Relying on *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65 (4th Cir. 1983), the Plaintiff urges this Court to adopt a requirement of absolute compliance and strict enforcement. The Fourth Circuit, however, in the more recent case of *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007), observed that this statement in *Mars* "was not to imply, however, that the Act's requirements should not be reasonably construed and equitably applied." *Id.* at 819 n.4. In reviewing its motion to dismiss, the Defendants urge the Court to keep this perspective in mind in evaluating Plaintiff's claims. In Bank of America and Freddie Mac's view, an award of the relief sought by Plaintiff, which would include forgiveness of finance charges and interest, would permit Plaintiff to reap an inequitable economic windfall without proof of any actual financial injury.

With respect to the 2006 loan, Plaintiff contends that the lender failed to accurately disclose the number and due dates of payments under the 2006 credit transaction. In her Complaint, she alleges that the TILA disclosure statement could be objectively read to require that all of the payments under the 2006 credit transaction were due on two dates, 359 payments of $652.66 on January 1, 2007, and one payment of $647.27 on December 1, 2036. Plaintiff argues that the creditor's failure in the 2006 credit transaction to specify the payment interval in its payment schedule disclosure was a material violation of TILA. Under Plaintiff's theory, the lender's failure to clearly specify that the 359 payments of $652.66 were payable in monthly intervals, as opposed to 45 days from the date of loan

closing, was an actionable TILA violation. Under this strict liability approach, logic and commonsense are a secondary consideration at best.[2] Plaintiff's position, however, enjoys some support in the Seventh Circuit where the court has held that when it comes to TILA, "hyper-technicality reigns." *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) (citations omitted). In *Hamm v. Ameriquest Mortgage Co.*, 506 F.3d 525, the Seventh Circuit, applying their policy of rigid scrutiny, concluded that a lender's failure to clearly delineate the schedule of payments was a TILA violation. The court in *Hamm* further noted, "[w]hether a particular disclosure is clear for purposes of TILA is a question of law that 'depends on the contents of the form, not on how it affects any particular reader.'" *Hamm*, 506 F.3d at 529 (citations omitted).

Plaintiff is correct that 15 U.S.C. § 1602(u), and the interpretive regulation published at 12 C.F.R. § 226.18(g), commonly referred to as Regulation Z, requires a creditor to disclose "the total of payments, the number and amount of payments, [and] the due dates or periods of payments scheduled." Plaintiff also draws the Court's attention to a number of reported cases adopting an objective standard in determining violations of TILA and rejecting the notion that deception, confusion, or actual injury are necessary to demonstrate an actionable claim for rescission. *Smith v. Check-N-Go of Ill., Inc.*, 200 F.3d

---

[2]Although of marginal relevance in evaluating the sufficiency of the evidence for 12(b)(6) purposes, it is interesting to note that the other loan documents clearly indicated that Plaintiff's payments were to be made in monthly installments. Moreover, since the immediate lawsuit was inspired by an imminent foreclosure, it is reasonable to infer that Plaintiff did not herself construe the disclosure form at issue as requiring payment of all but $647.27 of the loan 45 days from the date of closing.

7

511, 515 (7th Cir. 1999); *McGowan v. King, Inc.*, 569 F.2d 845, 849 (5th Cir. 1978). The sufficiency of the disclosure notice is a legal issue determined by facial examination.[3]

The Defendants counter that no plausible construction of the disclosure statement would lead to the conclusion that Plaintiff was required to "cut 359 checks in the amount $652.66 (each) and mail them all by January 1, 2007." The Defendants note several features of the disclosure statement at issue that supports its position. The payment schedule, entitled "Truth-In-Lending Disclosure for Real Estate Mortgage Loans," contains a chart entitled "YOUR PAYMENT SCHEDULE WILL BE:". The chart has three columns which lists the number of payments (# of pymts); amount of payments; and when payments are due. The first line reflects 359 payments in the amount of $652.66 due January 1, 2007. The second line shows one payment in the amount of $647.27 due December 1, 2036. Also significant is the disclosure of the amount financed, the annual percentage rate, and the total payments due under the loan. The payment schedule reflects that Plaintiff borrowed $99,357.85. The annual percentage rate was 6.8536. The total payments were $234,952.21. The latter figure represents the total of 359 payments of $652.66, plus one payment of $647.27. Under Plaintiff's theory of the case, an objective reading of the payment schedule would require a person borrowing $99,358 for 45 days to

---

[3]A court reviewing a motion to dismiss filed under Rule 12(b)(6) can consider documents outside the pleadings, without converting the motion to one for summary judgment, so long as the documents are integral to and explicitly relied on in the complaint. *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 335 (E.D. Va. 2005); *see also Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

pay $234,305. This computes to an interest rate of approximately 235%. No reasonable consumer would construe the payment schedule in such a fashion. The observations of the United States Court of Appeals for the First Circuit are instructions in this context, "[t]his emphasis on objective reasonableness, rather than subjective understanding, is also appropriate in light of the sound tenet that courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer--a consumer who is neither particularly sophisticated nor particularly dense." *Palmer v. Champion Mortgage*, 465 F.3d 24, 28 (1st Cir. 2006) (citations omitted).

TILA is undoubtedly a remedial statute designed to protect consumers against inaccurate and unfair credit billing. *See* 15 U.S.C. § 1601(a). Most federal circuits espouse a policy of "strict compliance" in enforcement of the material provisions of TILA. But as the Fourth Circuit stated in *Shelton*, absolute compliance and strict enforcement do not imply "that the Act's requirements should not be reasonably construed and equitably applied." *Shelton*, 486 F.3d at 819 n.4. Other reviewing courts have adopted a similar reading of TILA's enforcement provisions. *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 424 (1st Cir. 2001) (finding that Congress did not intend, in enacting TILA, for lenders to face "overwhelming liability for relatively minor violations."); *Smith v. Highland Bank*, 108 F.3d 1325, 1327 n.4 (11th Cir. 1997) (noting that "Congress would not have us adopt a hypertechnical reading of any part of TILA.").

Reviewing Plaintiff's allegations concerning the payment schedule disclosure form

incident to the 2006 loan, assuming the truth of all factual allegations and affording Plaintiff all reasonable inferences, the Court cannot conclude that the Amended Complaint pleads a plausible claim. Plaintiff's strained interpretation of the disclosure form defies objective reasonableness.

Turning next to the 2007 credit transaction, Plaintiff asserts in her Amended Complaint that she is entitled to rescission on the alternate ground that the lender sent her the incorrect notice of right to rescind form. This element of her claim is based on her contention that the right to rescind notice that she received was labeled "Different Lender" when in fact the transaction was actually a refinance with the same lender. Plaintiff passionately rejects the argument that this is simply a case of inadvertent mislabeling. In Plaintiff's view, there are substantive differences in the two forms of notice. Plaintiff maintains that TILA requires a creditor to "clearly and conspicuously" disclose to an obligor the obligor's right to rescind and the length of the rescission period, as well as to provide the obligor with "appropriate forms . . . to exercise his right to rescind [a] transaction." 15 U.S.C. § 1635(a); Regulation Z § 226.23(b)(1), (b)(2). According to Plaintiff, Regulation Z requires creditors to disclose the effects of rescission and to provide the obligor an appropriate model form to that effect, or "a substantially similar notice of rescission." Regulation Z § 226.23(h). Plaintiff also correctly points out that such notice is mandatory, not discretionary.

In support of her position, Plaintiff relies on *Handy* wherein the court noted that

there are material differences between a different lender and same lender notice of right to rescind. The distinguishing feature is that if the notice pertains to a new loan, the debtor must be told that if they rescind, they have a right to revert to their preexisting loan. Plaintiff argues that based on the failure of Bank of America's predecessor in interest to convey to her the proper right to rescind notice, she is entitled to exercise her extended right of rescission under 15 U.S.C. § 1635(f).

Again, Plaintiff urges a narrow construction of TILA as a strict liability statute and to keep in mind that compliance is judged by an objective, ordinary person standard. "Where more than one reading of a rescission form is 'plausible,' the form does not provide the borrower 'with a clear notice of what her right to rescind entails.'" *Handy*, 464 F.3d at 764.

Defendants rejoin with three counterpoints. First, they suggest a close examination of the 2006 and 2007 notes clearly demonstrates that the transactions were in fact conducted by different lenders—Lending Tree in 2006 and Countrywide in 2007. In her Amended Complaint, Plaintiff states in paragraph 7, "the 2006 credit transaction was in the name of Lending Tree, but the 2006 credit transaction was entered into for the benefit of, and was immediately transferred by Lending Tree to, Countrywide." In paragraph 14 of the Amended Complaint, Plaintiff clearly avers that "the creditor under the 2007 credit transaction was Countrywide . . . ." A reasonable reading of the Amended Complaint and review of the respective notes would appear to provide some factual support for Plaintiff's

position.

On an alternate front, the Defendants argue that the notice of right to rescind conveyed to Plaintiff in connection with the 2007 credit transaction met all the disclosure obligations mandated by TILA. They maintain that the interpretive regulation, Regulation Z, published at 12 C.F.R. § 226.23(b), requires that the notice contain the following information: "1) the retention or acquisition of a security interest in the consumer's principal dwelling; 2) the consumer's right to rescind the transaction; 3) how to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business; 4) the effects of rescission, as described in paragraph (d) of this section; and 5) the date the rescission period expires."

Therefore, even if the form sent to Plaintiff was technically incorrect, it provided her with all the information necessary to exercise her right of cancellation. Regulation Z requires a creditor to clearly and conspicuously disclose to an obligor the obligor's right to rescind. This standard, however, must be reasonably applied. "Most courts have concluded that the TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice." *Santos-Rodriquez v. Doral Mortgage Corp.*, 485 F.3d 12, 16 (1st Cir. 2007); *see also Veale v. Citibank F.S.B.*, 85 F.3d 577, 580-81 (11th Cir. 1996), *cert. denied*, 520 U.S. 1198, 117 S. Ct. 1556 (1997).

In *Santos-Rodriquez*, the U.S. Court of Appeals for the First Circuit reviewed a factual situation similar to that presented in the immediate case. The plaintiffs in *Santos-*

*Rodriquez* sought rescission of their home mortgage loan based on the lender's failure to provide them with sufficient notice of their rescission rights. Plaintiffs contended that the rescission notice form they received "failed to disclose that if a same-lender refinancing loan is rescinded, the original loan is not cancelled, meaning that the lender retains a security interest in the property under the original loan, and the consumer reverts to paying off the original loan." *Santos-Rodriquez*, 485 F.3d at 16. The court began its analysis by restating several overarching principles. First, that the model forms described in Regulation Z are not obligatory. "Nothing in the subchapter may be construed to require a creditor or lessor to use any model form or clause prescribed by the Board under this section." 15 U.S.C. § 1604(b). 12 C.F.R. § 226.23(b)(1), Regulation Z, requires that a notice of disclosure recite the five elements mentioned above.

Lastly, the court in *Santos-Rodriquez* reiterated that most courts have concluded that TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice. "Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation." *Smith v. Chapman*, 614 F.2d 968, 972 (5th Cir. 1980); *see Dixon v. D.H. Holmes Co.*, 566 F.2d 571, 573 (5th Cir. 1978). The court in *Santos-Rodriquez* held that the disclosure notice provided in that case, which tracked the five elements discussed

above, was more than sufficient to satisfy the regulatory requirement of Regulation Z.[4] Aligning itself with the Eleventh Circuit, the court in *Santos-Rodriquez* observed that in adopting the Truth-in-Lending Act Amendments of 1995, Congress rejected this hyper-technical view of TILA. *Santos-Rodriquez*, 485 F.3d at 17 n.6.

In the final analysis, an examination of the notes evidencing the 2006 and 2007 transactions would confirm that each involved different lenders. The fact that Lending Tree may have immediately transferred the loan to Countrywide is of no moment. It therefore appears that Plaintiff received the appropriate notice of right to rescind form in 2007.

Even if the 2007 lender sent the incorrect form, its contents disclosed all the information required under Regulation Z. The form clearly and conspicuously apprised Plaintiff of her rights to rescind. An objective, ordinary consumer reading the notice of rescission form sent to Plaintiff would construe it as applying to this transaction only. Although perhaps imperfect, the notice provided her with all the information that TILA requires.

Plaintiff's last allegation focuses on a supplemental document she received in connection with her 2007 loan application, and whether it conflicted with the disclosures contained in the Notice of Right to Cancel. This document, entitled "Application Fee Disclosure," informed Plaintiff that she would be required to pay a non-refundable

---

[4]Interestingly, the court in *Santos-Rodriquez* specifically rejected the Seventh Circuit's view in *Handy* that "TILA does not easily forgive 'technical' errors." *Handy*, 464 F.3d at 764.

14

$299.00 application processing fee. Plaintiff construes the non-refundable nature of this fee as being in direct contrast to the Notice of Right to Cancel form that stated she would not be liable for any charges if she decided to cancel the 2007 loan. To Plaintiff, this contradiction sowed the seeds of confusion and impeded her right to be informed of the consequences of rescission, rendering the Notice of Right to Cancel ambiguous.

In opposition, Defendants argue that Plaintiff's claims are misleading and lack legal support. They insist that the Notice of Right to Cancel met all the requirements of TILA and that the contents of the Application Fee Disclosure form are irrelevant. Moreover, the Defendants contend that according to Federal Reserve Board ("FRB") commentary, the non-refundable provision does not apply in cases of rescission and therefore does not conflict with the Notice of Right to Cancel provided to the Plaintiff.[5]

Based on the clear contradiction in content between the two documents at issue, this Court must find that Plaintiff has alleged a plausible claim as to this element of the Complaint. As plead in the Amended Complaint, the Notice of Right to Cancel states that upon timely cancellation of the loan, the lender "must return [] any money or property [] given to us or to anyone else in connection with this transaction." In direct contrast, the Application Fee Disclosure form asserts "the application fee is a non-refundable fee to defray initial general expenses incurred in processing your loan application." Under any

---

[5] The FRB Commentary cited by Defendants refers to open-end credit transactions, such as credit card accounts with revolving lines of credit, rather then the close-end credit transaction relevant in this home mortgage transaction.

reasonable interpretation of Regulation Z, the alleged contradiction between these documents renders the consequences of rescission obscure to the ordinary consumer. Although the evidence may later provide adequate clarification of the apparent contradiction, at this stage of the litigation, sufficient facts exist for the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

For the foregoing reasons, the Court is of the opinion that Plaintiff has failed to plead an actionable TILA violation in her allegations facially challenging the 2006 and 2007 disclosure statements mentioned in the Amended Complaint. The facts, coupled with the reference documents, simply do not state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570. Therefore, Bank of America and Freddie Mac's Motion to Dismiss on these allegations is granted. On Plaintiff's last allegation, however, sufficient facts were alleged to find that the disclosure of supplemental information, as contained in an Application Fee Disclosure form, could have plausibly rendered the Plaintiff's 2007 Notice of Right to Cancel unclear. Thus, Bank of America and Freddie Mac's Motion to Dismiss on this ground is denied.

An appropriate Order will accompany this Memorandum Opinion.

                                                    /s/
                                    Henry E. Hudson
                                  United States District Judge

Date: May 20 2010
Richmond, VA