IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FAYE D. LARRABEE, )
)
      Plaintiff, )
)
v. ) Civil Action No. 3:09CV712–HEH
)
BANK OF AMERICA, N.A. and )
THE FEDERAL HOME LOAN )
MORTGAGE CORPORATION, )
)
      Defendants. )

## MEMORANDUM OPINION
(Granting Defendants' Motion for Summary Judgment)

This is an action seeking rescission of a mortgage loan transaction under the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* It is presently before the Court on Defendants' Motion for Summary Judgment. The parties have filed detailed memoranda in support of their respective positions. Because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid in the decisional process, the Court will dispense with oral argument. For the reasons stated below, the Defendants' Motion will be granted.

## I. BACKGROUND

The following facts are not in dispute. On or about November 21, 2007, Faye D. Larrabee ("Plaintiff") applied for a refinance mortgage loan through Countrywide Bank, FSB ("Countrywide"). In connection with that application, Countrywide prepared a Good Faith Estimate ("the Estimate")—an itemized estimate of the charges Plaintiff was

1

likely to incur at the settlement of her loan. The Estimate included a $299 application fee, which was payable by Plaintiff outside of closing.[1]

Countrywide also prepared for Plaintiff an Application Fee Disclosure ("the Fee Disclosure"). The Fee Disclosure advised that Plaintiff would be charged a $35 credit report fee, a $380 appraisal fee, and a $299 application fee in connection with her mortgage loan application. According to the Fee Disclosure, the credit and appraisal fees were refundable if Plaintiff withdrew her application before any creditor appraisal services had been rendered or if the lender was required by law to return such fees. The application fee, however, "[wa]s a non-refundable fee to defray initial general expenses incurred in processing [Plaintiff's] loan application." (Mem. Law Supp. Def's Mot. Summ. J. [hereinafter Def.'s MSJ] Ex. A-2.)

Plaintiff consummated the loan transaction on December 17, 2007. At closing, she acknowledged receipt of the Fee Disclosure, and received and signed a U.S. Department of Housing & Urban Development Settlement Statement ("HUD-1").[2] Plaintiff's HUD-1 showed that she had been credited $299 toward her application fee. Notably, Plaintiff had never in fact paid the application fee.[3]

Also at closing, Countrywide provided Plaintiff with two copies of a Notice of Right to Cancel ("the Notice"), which informed Plaintiff of her unconditional three-day

---

[1] The Estimate denoted the application fee as "POC-B." A coding key on the Estimate explained that "POC-B" meant the fee was payable outside of closing by the borrower.
[2] A HUD-1 generally corresponds to the good faith estimate given to a borrower, but reflects the borrower's actual settlement costs.
[3] A document entitled "Documents from Funding Check" prepared four days after closing also showed that Plaintiff was credited $335—$299 for the application fee, and $35 to offset the credit report fee.

2

right to rescind under TILA. The Notice explained that the Plaintiff had a legal right to cancel the transaction without cost, and that, in the event of cancellation, the lender "must return to you any money or property you have given to us or to anyone else in connection with this transaction." (Def.'s MSJ Ex. A-5.) Plaintiff did not exercise her right of rescission within three days after closing.

Plaintiff's mortgage amount was $142,500, payable over 30 years at an interest rate of 6.5%. Specifically, Plaintiff was required to make 359 monthly payments of $900.70 between February 1, 2008, and December 1, 2037, with a final payment of $897.38 on January 1, 2038. Plaintiff made her first payment on February 7, 2008, followed by sporadic payments through August 18, 2009. Plaintiff has not made any mortgage payments since. On the other hand, Defendant Bank of America, N.A. ("Bank of America")—the successor by merger to Countrywide's assets and liabilities—has advanced two insurance payments totaling $1,264.63 on Plaintiff's behalf to ensure continued hazard insurance coverage on the property.

On October 15, 2009, Plaintiff learned that the Trustee under the Deed of Trust intended to sell Plaintiff's home at a foreclosure sale. In response, Plaintiff mailed to Bank of America a letter purporting to rescind the transaction.[4] On November 12, 2009, Plaintiff filed suit against Bank of America, alleging TILA violations and seeking rescission of the transaction. Bank of America moved to dismiss for failure to state a claim.

---

[4] The letter also purported to rescind a 2006 transaction with Home Loan Center, Inc., d/b/a Lending Tree. The Court need not here address the details of that transaction because Plaintiff's claims relating thereto were dismissed by order and opinion dated May 20, 2010.

3

At some point after Plaintiff filed suit but before this Court ruled on Bank of America's motion to dismiss, Bank of America assigned the note to Federal Home Loan Mortgage Corporation ("Freddie Mac" or, collectively with Bank of America, "Defendants"). On February 15, 2010, Plaintiff sent a notice of rescission to Freddie Mac. Plaintiff also filed, after hours, a motion for leave to file an amended complaint.

On February 16, 2010, this Court granted Bank of America's motion to dismiss for failure to state a claim,[5] and denied Plaintiff leave to file an amended complaint. On February 26, 2010, Plaintiff moved this Court to reconsider the dismissal of her complaint. By agreement of the parties, this Court on March 11, 2010, entered an Order vacating its February 16 Orders and deeming Plaintiff's Amended Complaint timely filed.

Plaintiff's Amended Complaint added Freddie Mac as a Defendant and added a third theory supporting TILA rescission—namely, that Defendants failed to clearly and conspicuously disclose her TILA right of rescission, and thus she was entitled to rescind the loan transaction for an extended period of three years after closing.

On April 4, 2010, Defendants moved to dismiss Plaintiff's Amended Complaint. The Court granted Defendants' motion as to those theories of TILA rescission that had appeared in Plaintiff's original Complaint, but denied Defendant's motion as to the additional theory for rescission in Plaintiff's Amended Complaint.

On October 26, 2010, Defendants moved for summary judgment on Plaintiff's remaining claim. Defendants contend that no TILA violation occurred, and that even if it

---

[5] The Court left open the question whether dismissal would be with or without prejudice.

had, Plaintiff has neither offered evidence establishing her ability to tender the loan proceeds,[6] nor shown that the equities in this case weigh in her favor. This Court agrees.

## II. STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if the evidence, when viewed "in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990), "is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once the movant meets this initial burden, however, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). "[A] complete failure of proof concerning an essential element of the [plaintiff's] case

---

[6] When a borrower rescinds, she must return to the creditor the value of all property given to her by the creditor. *See* 15 U.S.C. § 1635(b); 12 C.F.R. §§ 226.15(d)(3), 226.23(d)(3). Defendants assert that, as of October 26, 2010, the total amount Plaintiff would need to tender in the event of rescission is $125,150.53. (Def.'s MSJ Ex. B ¶ 23.) Plaintiff calculates the amount tender required as $125,204.99. (Pl.'s Mem. Opp. Mot. Summ. J. 3 [hereinafter Pl.'s Mem. Opp. MSJ].) In any event, Plaintiff acknowledges, and this Court agrees, that "[t]he difference is not significant." (Pl.'s Mem. Opp. MSJ 9.)

5

necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S. Ct. at 2552. In short, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate. *Matushita,* 475 U.S. at 587, 106 S. Ct. at 1356.

## III. ANALYSIS

The federal Truth-in-Lending Act ("TILA") regulates the relationship between lenders and borrowers to facilitate the "informed use of credit" by "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a). To that end, TILA mandates that consumers who engage in a credit transaction using their primary dwelling as a security interest be given an unconditional three-day period in which to rescind the loan transaction and recover any monies paid to the creditor. *See* § 1635(a), (b). Following valid rescission, the borrower "is not liable for any finance or other charge," including application fees, "and any security interest given by the obligor . . . becomes void." § 1635(b); 12 C.F.R. § 226.23(d)(1), (d)(2).

TILA and its implementing regulations require creditors to provide borrowers two copies of a notice of the right to rescind, which "clearly and conspicuously" disclose the borrower's right of rescission, the means by which to exercise that right, and the effects of rescission.[7] 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(1). If a creditor fails to

---

[7] Additional "material disclosures" required by TILA, such as disclosure of the annual percentage rate, finance charges, and the payment schedule, are not at issue in this case.

properly make the required disclosures, the borrower's right of rescission is extended from three days to three years. 15 U.S.C. § 1635(f).

In this case, Plaintiff concedes that "the notice of right to cancel, taken alone, was in proper form," but argues that the non-refundability language in the Fee Disclosure rendered unclear Plaintiff's right to recoup monies paid in the event of rescission. (Pl.'s Mem. Opp. Summ. J. 8–9.)

Plaintiff correctly asserts that supplemental information can, under certain circumstances, undermine an otherwise clear notice of right to rescind. For example, several courts have found that a borrower's rights might not be clearly disclosed where, at closing, the borrower is required to sign both (1) a rescission notice, and (2) a false confirmation stating that three days have elapsed since closing and the borrower has waived her right to rescind. *See, e.g., Rodash v. AIB Mortgage Co.*, 16 F.3d 1142, 1146–47 (11th Cir. 1994);[8] *Adams v. Nationscredit Fin. Servs. Corp.*, 351 F. Supp. 2d 829, 833–34 (N.D. Ill. 2004); *Rodrigues v. Members Mortgage Co.*, 323 F. Supp. 2d 202, 209 (D. Mass. 2004); *Wiggins v. Avco Fin. Servs.*, 62 F. Supp. 2d 90, 96 (D. D. C. 1999). Other courts have found TILA violations under similarly confusing circumstances. *See, e.g., Williams v. Empire Funding Corp.*, 109 F. Supp. 2d 352, 356 (E.D. Pa. 2000) (holding expiration of rescission period was unclear where notice referenced both TILA's three-day rescission period and Pennsylvania's one-day rescission period, without

---

[8] Notably, *Rodash* predated—and in fact spurred—the 1995 TILA Amendments, which Congress passed because it never "intended that lenders would be made to face overwhelming liability for relatively minor violations." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576 (7th Cir. 2008) (citing *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 424 (1st Cir. 2007)).

distinguishing between the two); *Jenkins v. Landmark Mortgage Corp.*, 696 F. Supp. 1089, 1093–94 (W.D. Va. 1988) (finding TILA violation where borrower received at closing a letter explicitly stating fees would not be recovered in rescission, and borrower did not timely receive notice of right to cancel).[9]

Plaintiff's case presents no comparable source of ambiguity. Under any natural reading, the nonrefundability language in the Fee Disclosure meant that Plaintiff would be charged a $299 application fee, which would become nonrefundable if she chose not to consummate the loan. (*See* Def.'s MSJ Ex. A-2.) Even Plaintiff concedes this point. (*See* Pl.'s Mem. Opp. MSJ 7–8 (acknowledging that the non-refundability language meant "that the application fee would not be refunded if the borrower did not go through with the loan").) It simply does not follow—and no reasonable person would deduce—that the fee would be refundable only on the added condition that the borrower did not thereafter rescind.[10]

---

[9] Plaintiff also cites to *Jones v. E*Trade Mortg. Corp.*, 397 F.3d 810 (9th Cir. 2005). *Jones* is inapposite. The Ninth Circuit never addressed whether the rescission notice "clearly and conspicuously" disclosed the borrower rescission rights; rather, the court found that the lender's practice of *actually retaining* an application fee subverted the borrower's rescission rights. *Id.* at 812–13. Furthermore, the borrower in *Jones* had already paid, and thus stood to lose, the $400 application fee. *Id.*

[10] Indeed, even the Federal Reserve Board commentary on Regulation Z refers to "nonrefundable" pre-consummation fees which must nevertheless be refunded in the event of rescission. *See, e.g.*, 12 C.F.R. § 226, pt. G, Supp. I to Part 226, para. 5b(h)(3)(noting that fees collected before disclosures are provided may become "nonrefundable," but "[o]f course, all fees must be refunded if the consumer later rescinds under § 226.15"); 12 C.F.R. § 226, pt. G, Supp. I to Part 226, paras. 2(a)(13)(1) (noting that consummation does not occur merely because the consumer has, for example, paid "a nonrefundable fee") and 19(b)(2) ("A creditor must give the disclosures required under this section at the time an application form is provided or before the consumer pays a nonrefundable fee, whichever is earlier.").

Moreover, Plaintiff never in fact paid the $299; rather, as the HUD-1 clearly showed, Plaintiff was credited the $299 at closing. (*See* Def.'s MSJ Ex. A-4.) Plaintiff fails to explain how any reasonable person could conclude that, upon rescission, she stood to lose monies never paid. Tellingly, Plaintiff has never claimed—even in response to Defendants' discovery requests—that she was actually confused by the Fee Disclosure.[11] (Def.'s MSJ 17, Ex. C.)

Under the facts presented, the Fee Disclosure could not have led a reasonable person to believe she would forfeit $299 by exercising her right of rescission. Because Plaintiff received clear and conspicuous notice of her right to rescind,[12] no TILA violation occurred and Defendants are entitled to judgment as a matter of law.

---

[11] Plaintiff correctly asserts that TILA compliance is governed by an objective standard. (*See* Pl.'s Mem. Opp. MSJ 13); *see also Smith v. Check-N-Go of Ill., Inc.*, 200 F.3d at 514–15; *Santos-Rodriguez v. Doral Mortgage Corp.*, 485 F.3d 12, 19 n.9 (1st Cir. 2007). Accordingly, a borrower's subjective claim of confusion is not determinative. *See Check-N-Go*, 200 F.3d at 514–15; *Santos-Rodriguez*, 485 F.3d at 18–19. It does not follow, however, that a borrower's subjective *clarity* is irrelevant when determining whether a reasonable person would have been confused under the circumstances. Plaintiff's apparent lack of confusion cuts against her claim that a reasonable person would have been confused under the circumstances.

[12] Even if a TILA violation had occurred, rescission would not be appropriate in this case. Under TILA, a borrower who rescinds is required to tender the net loan proceeds to the lender. 15 U.S.C. § 1635(b). A TILA plaintiff who offers only bald, unsupported speculation that she could tender the loan proceeds does not state a claim for rescission. *Hudson v. Bank of Am., N.A.*, No. 3:09CV462, 2010 U.S. Dist. LEXIS 57909, at *13–14 (E.D. Va. June 11, 2010) (dismissing complaint where Plaintiff alleged he could tender loan proceeds if given time to seek refinancing or a buyer for his residence, amongst other conditions). In this case, Plaintiff has offered only caveat-laden speculations regarding her ability to tender (*see* Pl.'s Am. Compl. ¶ 32 ("On information and belief, Larrabee . . . *might* be able to obtain funds to tender. . ."); *id.* (noting that Plaintiff "cannot determine whether she will be able to obtain refinancing funds sufficient to make such tender . . . until either (a) Freddie Mac agrees to rescission and the amount. . . or (b) the adjudication of her right to TILA rescission and the amount of such tender in this case")), and an unsubstantiated, unqualified assertion that she "estimate[s] the value of [her] home to be $165,000" (*see* Pl.'s Mem. Opp. MSJ 7). Such "unsupported speculation is not sufficient to defeat a summary judgment motion," *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987), and this Court could, in its discretion, deny rescission on this ground, *see Am.*

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment will be granted.

An appropriate Order will accompany this Memorandum Opinion.

                                                    /s/
                                 Henry E. Hudson
                                 United States District Judge

Date: Nov. 19, 2010
Richmond, VA

*Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821–22 (4th Cir. 2007) (affirming summary judgment where district court determined plaintiffs were unable to tender loan proceeds).